IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Aaron Murphy, | ) | |
| | ) | |
| Plaintiff, | ) | No. _____ |
| | ) | |
| -vs- | ) | *(Jury Demand)* |
| | ) | |
| Wexford Health Sources, Inc., a | ) | |
| foreign corporation | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

Plaintiff, by counsel, alleges as follows:

1. This is a healing arts malpractice action arising under Illinois law. The jurisdiction of this Court is conferred by 28 U.S.C. § 1332.

2. Plaintiff Aaron Murphy is a resident of the Northern District of Illinois.

3. Plaintiff initially brought this action as a supplemental claim in a federal civil rights action in the Southern District of Illinois, *Murphy v. Wexford Health Sources, Inc., et al.*, No. 3:18-cv-1077. The parties completed discovery, submitted a proposed pre-trial order, and were prepared for trial to start on December 2, 2019. On November 20, 2019, the district judge granted summary judgment to the defendants on plaintiff's federal claims and thereafter declined to exercise jurisdiction over

plaintiff's state law claims. Plaintiff's appeal from the final decision is pending in the Seventh Circuit as Case Number 19-3310.

4. Defendant Wexford Health Sources, Inc. is a Pennsylvania corporation whose principal place of business is in the State of Pennsylvania.

5. The amount in controversy, exclusive of costs, is in excess of $75,000.

6. Plaintiff was a prisoner in the Illinois Department of Corrections in 2016 when, on May 4, 2016, a dentist extracted plaintiff's upper left molar (#16).

7. Following the extraction, plaintiff suffered serious personal injuries as the result of negligent acts of a physician and nurses, each acting within the scope of his or her employment for defendant.

8. Plaintiff began to experience swelling the day after the extraction and was seen at sick call by a nurse at about 10:00 a.m. on May 6, 2016.

9. The nurse noted that plaintiff's left cheek had swollen "to softball size," the cheek was tender to the touch, and the swelling extended to plaintiff's neck.

10. The nurse shared his observations with the physician employed by defendant at the prison.

11. The physician could have, but chose not to, examine plaintiff. Instead, the physician ordered that plaintiff receive oral penicillin, one gram, twice a day for five days.

12. Records maintained by defendant's employees do not show that this medication was actually ingested by plaintiff.

13. Plaintiff again complained to medical personnel employed by defendant of swelling and difficulty in swallowing at about 1:00 a.m on May 7, 2016.

14. A nurse, employed by defendant, examined plaintiff, observed massive swelling in his mouth, and refused to confer with a physician because it was 1:00 a.m.

15. At all times relevant, the standard of care for a nurse confronted with a patient exhibiting the above-described symptoms was to immediately share his (or her) observations with a physician.

16. The nurse employed by defendant breached this standard of care.

17. Plaintiff continued to experience facial swelling and was examined by a nurse employed by defendant at about 9:00 a.m. on May 7, 2016.

18. The nurse observed severe, "softball size" swelling extending over plaintiff's left cheek into his neck, as well as additional swelling on the plaintiff's right neck.

19. The nurse spoke by telephone with the physician employed by defendant and informed the physician that plaintiff was experiencing severe "softball size" swelling extending over his left side cheek into his neck. The nurse also informed the physician of additional swelling on plaintiff's right neck and that the swelling was worse than it had been the day before.

20. The physician, acting within the scope of his employment, instructed the nurse to provide plaintiff with an injection of Solumedrol, a steroid.

21. At all times relevant, a physician who met the standard of care knew that providing steroids to plaintiff on May 7, 2014 would harm plaintiff because steroids will accelerate progression of bacterial infection, should only be used in a hospital setting, and then only in conjunction with appropriate antibiotics, which plaintiff was not receiving.

22. At all times relevant, the standard of care for a physician confronted with a patient exhibiting the symptoms reported to the physician on May 7, 2014 would have been to send the patient to a hospital for imaging and appropriate treatment, including but not limited to intravenous antibiotics.

23. The physician employed by defendant breached this standard of care.

24. Plaintiff's condition continued to worsen as the swelling increased on his face.

25. As the result of staffing decisions made by defendant, plaintiff was not examined by a nurse or a physician on Sunday, May 8, 2016.

26. The physician, employed by defendant, examined plaintiff on Monday, May 9, 2016 for about five minutes. This was the first time that plaintiff had been examined by a physician after the onset of swelling.

27. The physician noted that plaintiff could not fully close his mouth and had difficulty swallowing.

28. The symptoms plaintiff exhibited on May 6, 7, 8, and 9 were indicative of cellulitis (a diffuse inflammation of the connective tissue caused by a spreading bacterial infection just below the skin surface) that had the potential to migrate quickly down the fascial planes.

29. At all times relevant, the standard of care for a physician confronted with a patient exhibiting the symptoms observed by the physician on May 9, 2016 would have been to send the patient to a hospital for imaging and appropriate treatment, including but not limited to intravenous antibiotics.

30. The physician employed by defendant breached this standard of care.

31. The physician employed by defendant observed on May 10, 2016 that plaintiff's condition had continued to worsen: the swelling of his throat and mouth had increased and it was becoming harder for plaintiff to open his mouth.

32. At all times relevant, the standard of care for a physician confronted with a patient exhibiting the symptoms observed by the physician on May 10, 2016 would have been to send the patient to a hospital for imaging and appropriate treatment.

33. The physician employed by defendant breached this standard of care.

34. The physician employed by defendant observed on May 11, 2016 that plaintiff's condition was continuing to worsen and plaintiff was

evacuated to a hospital emergency room at about 11:45 a.m. on May 11, 2016.

35. The emergency room physician ordered a CT scan and diagnosed plaintiff with facial cellulitis, periapical abscess, and periodontal abscess. Plaintiff was then transferred to a larger hospital, where he was diagnosed with "Ludwig's angina," a life threatening disease that required urgent surgical treatment and which had resulted from bilateral infections involving all or nearly all of the spaces of the neck.

36. A physician performed an emergency tracheostomy on May 11, 2016 to insure that plaintiff would be able to breathe, followed by several extensive surgeries. Plaintiff remained at the hospital for nearly three weeks until he was discharged on May 31, 2016.

37. Had plaintiff been transferred to a hospital on May 5, 6, 7, 8 or 9, 2016, it is more likely than not that he could have been treated with intravenous antibiotics and supportive care, thereby avoiding the multiple surgeries, prolonged recuperation, permanent disfigurement, and pain and suffering that he experienced.

38. As a result of the foregoing healing arts malpractice of employees of defendant Wexford, plaintiff incurred physical injury, endured great pain and suffering, and is permanently disfigured.

39. Plaintiff hereby demands trial by jury.

40. Plaintiff will submit the documents specified in 2-622 of the Illinois Code of Civil Procedure, as required by *Young v. United States*, ___F.3d ___, 2019 W 5691878 (7th Cir. Nov. 4, 2019), *pet. for reh'ng filed* Nov. 18, 2019.

WHEREFORE plaintiff requests that judgment be entered against defendant for appropriate compensatory damages in excess of one hundred thousand dollars.

/s/ <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC No. 08830399
Joel A. Flaxman
200 South Michigan Ave. Ste 201
Chicago, Illinois 60604
(312) 427-3200
*Attorneys for Plaintiffs*